## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

Case No.: _____

| | |
|---|---|
| ARTIFICIAL INTELLIGENCE IMAGING ASSOCIATION, INC., | |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| MVISION AI, INC. | |
| Defendant. | |

## COMPLAINT FOR PATENT INFRINGEMENT, UNJUST ENRICHMENT AND INJUNCTIVE RELIEF

Plaintiff ARTIFICIAL INTELLIGENCE IMAGING ASSOCIATION, INC. ("AIIA" or "Plaintiff"), by and through its undersigned counsel, hereby files its Complaint for Patent Infringement and alleges as follows:

### NATURE OF ACTION

1.     This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code, and in particular 35 U.S.C. § 271. Defendant directly infringes by making, using, selling, and offering to sell its GBS Contour+ software to healthcare providers in the United States.

### THE PARTIES

2.     Plaintiff is a Florida corporation with a principal place of business at 8875 Hidden River Parkway, Tampa, Florida 33637. AIIA is the assignee and current owner of all rights, title, and interest in U.S. Patent No. 11,257,272 ("the

'272 Patent"), including the right to enforce the patent and pursue remedies for infringement. The assignment has been recorded with the U.S. Patent and Trademark Office.

3.      Defendant MVISION AI, INC. ("Mvision" or "Defendant") is a Finnish company with its principal United States office located at 21750 Hardy Oak Blvd, Suite 104, San Antonio, Texas 78258-4946, within the San Antonio Division of the Western District of Texas. Upon information and belief, Mvision has marketed and sold its GBS Contour+ software to hospitals throughout Texas and the United States, including within this judicial district.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over the patent infringement claims under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Patent Laws of the United States, 35 U.S.C. § 271.

5.      This Court has personal jurisdiction over Mvision because Defendant maintains its principal United States office in San Antonio, Texas, within this judicial district. Defendant operates, conducts, engages in, and carries on business in Texas by marketing and selling its GBS Contour+ software to healthcare providers in the state. Upon information and belief, Mvision has sold and/or offered for sale its GBS Contour+ software to Texas-based customers, including hospitals and medical facilities within this district as well as throughout the United States, and has provided post-sale services such as installation support, technical

assistance, and product training within Texas. These acts constitute purposeful availment of the Texas market, and this action arises directly from those contacts.

6.     Venue is proper in the San Antonio Division of the Western District of Texas pursuant to 28 U.S.C. § 1400(b) because:

a.     Defendant Mvision maintains its principal United States office at 21750 Hardy Oak Blvd, Suite 104, San Antonio, Texas 78258-4946, which constitutes a regular and established place of business within this district under 28 U.S.C. § 1400(b) and the standards set forth in *In re Cray Inc.*, 871 F.3d 1355, 1359–60 (Fed. Cir. 2017).

b.     Defendant has committed acts of infringement in this district, including selling and providing training for the accused GBS Contour+ software to healthcare institutions within the Western District of Texas and offering related technical services. Upon information and belief, installations and support activities related to Mvision's software have occurred within this district.

## THE PATENT IN SUIT

7.     The United States Patent and Trademark Office issued U.S. Patent No. 11,257,272, titled "Generating Synthetic Image Data for Machine Learning," on February 22, 2022. A true and correct copy of the '272 Patent is attached hereto as **Exhibit 1** and incorporated herein by reference for all purposes.

8.    The '272 Patent claims methods for generating synthetic image data used to train machine learning models. Claim 1, for example, teaches technical steps that are used by Mvision such as selecting medical imaging backgrounds from a database, incorporating 3D anatomical models, applying tissue-specific visual characteristics, and using parameters that simulate imaging equipment to generate synthetic training data that is used to train machine learning systems.

9.    AIIA is the assignee and current owner of the '272 Patent, including the right to enforce the patent and recover for past and ongoing infringement, and therefore has standing to bring this action.

## GENERAL ALLEGATIONS

10.    Prior to filing this complaint, AIIA sent Mvision a formal demand letter on June 9, 2025, identifying the '272 Patent and asserting that Mvision's GBS Contour+ software infringes one or more of its claims. Despite this notice and AIIA's offer to license the patent, Mvision has continued to promote and, upon information and belief, expanded sales of the accused product in Texas and throughout the United States.

11.    Plaintiff seeks damages, including lost profits, reasonable royalties, and enhanced damages under 35 U.S.C. § 284 for Defendant's willful and egregious infringement, and injunctive relief for Defendant's infringement of U.S. Patent No. 11,257,272.

## DEFENDANT'S DIRECT, INDUCED, AND
## CONTRIBUTORY INFRINGEMENT

12.    Mvision develops and distributes specialized radiotherapy planning software, specifically its GBS Contour+ product. According to MVision's website (https://mvision.ai/, accessed October 20, 2025), GBS Contour+ is a comprehensive radiation oncology solution that employs artificial intelligence for automated contouring and treatment planning optimization.

13.    GBS Contour+ is described as an "AI-powered auto-segmentation software that delivers fast and precise automatic delineation of organs-at-risk (OARs) and lymph node areas," trained on peer-reviewed contouring data according to over 25 consensus guidelines, covering more than 300 regions of interest (ROIs).

14.    Public technical blog posts, such as "Deep Learning to Generate Synthetic CT Images from MR for Radiotherapy Treatment Planning" (https://mvision.ai/deep-learning-to-generate-synthetic-ct-images-from-mr-for-radiotherapy-treatment-planning/, published January 16, 2023), provide conclusive evidence that Mvision incorporates synthetic data generation using deep learning models like generative adversarial networks (GANs) to create synthetic CT images from real MR inputs. In direct violation of the '272 Patent, these synthetic images are explicitly used to "enlarge or augment training datasets required by machine learning models," minimizing data requirements and improving model performance for tasks like contouring and dose prediction.

15.    Based on this and other publicly available technical documentation, including a whitepaper on "Man vs. Machine (Learning): Comparing Speed and Cost-

Effectiveness of Manual vs. Deep Learning Segmentation" (available at https://drive.google.com/file/d/1UhDb8nr3Ld0-jBIhU2-Zb-yBifa7_Y0i/view), AIIA has conclusively determined that GBS Contour+ incorporates synthetic data generation and machine learning training methods that practice all of the steps in Claim #1 of the '272 Patent. AIIA continues to investigate Mvision's practices and makes these allegations on information and belief, pending further discovery.

16.    The use of such methods constitutes direct infringement under 35 U.S.C. § 271(a), as Mvision makes, uses, sells, and offers for sale the infringing software in the United States. Additionally, by providing user guides, integration support, and marketing materials encouraging clinics to deploy GBS Contour+ for AI-driven contouring (e.g., claiming up to 95% reduction in manual work), Mvision induces infringement under § 271(b). Contributory infringement under § 271(c) arises from supplying components like cloud-based AI models knowing they are especially adapted for infringing use in radiotherapy workflows.

17.    Based on information available from Mvision's public website, blog posts, and product evaluations (e.g., "Contour+ Performance on Male Pelvis Synthetic CTs," https://mvision.ai/contour-performance-on-male-pelvis-synthetic-cts/, published January 19, 2024), there is clear documented evidence that Mvision's GBS Contour+ software uses synthetic data generated by methods that correspond to the steps claimed in Claim 1 of the '272 Patent to train its machine learning system. Specifically, Mvision's descriptions of generating synthetic CT images via GANs— where a generator constructs synthetic scenes from imaging data and a

discriminator evaluates realism—align with the patented process as taught by '272 Patent of receiving databases (e.g., medical imaging libraries as backgrounds), constructing synthetic scenes using 3D modeling, applying textures or densities, and simulating virtual imaging parameters.

18.    AIIA has compared publicly described features of the GBS Contour+ product with the patented methods as taught by the '272 Patent and documents the following components of the Mvision software that are directly analogous to the methods taught by the '272 Patent:

    a.    background imaging data (e.g., real MR images used as inputs for synthetic CT generation) used for machine learning training;

    b.    3D anatomical models (e.g., implied in rendering organ structures and lymph nodes in synthetic scenes) used for machine learning training;

    c.    texture or density pattern applications (e.g., applying tissue density simulations in CT synthesis) used for machine learning training;

    d.    simulation of imaging equipment parameters (e.g., virtual camera-like settings in GAN rendering for realistic pixel outputs) used for machine learning training.

19.    This comparison is based on publicly accessible information, such as the aforementioned blog post detailing how "the generator takes real MR images as

input and generates synthetic CT images," and AIIA's good faith interpretation of those descriptions in light of standard practices in medical AI.

20.    Based on publicly available descriptions, technical documentation, product demonstrations, and peer-reviewed studies (e.g., "A Clinical Evaluation of MVision AI's Contour+ Models," https://mvision.ai/a-clinical-evaluation-of-mvision-ais-contour-models/, published April 23, 2025), Mvision's GBS Contour+ software implements specific technical features that precisely correspond to and practice each method step recited in Claim 1 of the '272 Patent. The software's synthetic data generation functionality performs the following steps:

> a.    Receiving and processing MR image data and associated medical imaging libraries as training input (e.g., as described in the synthetic CT blog post, where real MR images serve as the "database of background images");
>
> b.    Constructs synthetic CT image scenes using 3D modeling and rendering techniques (e.g., GAN generator constructs pixel-based CT scenes from 3D anatomical data implied in radiotherapy contouring);
>
> c.    Applies virtual imaging parameters that function similarly to camera settings (e.g., simulation of CT scanner parameters like density mapping and projection, akin to virtual camera intrinsics and calibration);

    d.     Rendering images as pixel-based outputs (e.g., output synthetic CT as pixel coordinates); and,

    e.     Compiles the resulting images into training datasets used to develop or improve deep learning models (e.g., explicitly stated for augmenting datasets to train contouring AI).

### Claim 1 Infringement Analysis

21. Mvision's public disclosures provide substantial evidence that GBS Contour+ infringes Claim 1 literally or under the doctrine of equivalents.

22. Claim 1 recites a method for generating synthetic image data comprising: (a) receiving, by a processor, a database of background images, an object database including 3D models, a library of texture materials, and a library of camera setting files; (b) constructing a synthetic image scene rendered by a graphics rendering engine, including selecting and arranging a background, selecting and arranging a 3D model with texture; (c) placing a virtual camera with defined settings (position data, intrinsics, calibration, capture); (d) rendering projection coordinates as pixel coordinates; and (e) appending to a training dataset for ML computer vision tasks.

23. Mvision's synthetic CT generation, as detailed in their January 16, 2023 blog post, mirrors this. The post explains a GAN-based approach where a generator receives MR images (background database) and anatomical libraries (object/3D models), applies textures/densities (library of materials), and uses virtual parameters (camera settings) to render synthetic CTs. These are appended to

datasets for training contouring models, a computer vision task per Claim 5 (image segmentation, object classification). The post states: "Synthetically generated images can also be used to enlarge or augment training datasets required by machine learning models," directly invoking step (e).

24.     Public evaluations, such as the April 2023 study "Research Results of MVision AI Contour+ Models' Clinical Evaluation" (https://mvision.ai/research-results-of-mvision-ai-contour-models-clinical-evaluation/), note that models are trained on augmented datasets from 40 clinics, implying synthetic augmentation to handle variability in scanner models. A 2024 post on synthetic CT performance (https://mvision.ai/contour-performance-on-male-pelvis-synthetic-cts/) evaluates Contour+ on MRCAT synthetic CTs, suggesting they use similar generation methods internally for training.

25.     To illustrate, below is a claim chart for how MVision violates Claim #1 of the '272 Patent:

| Claim #1 Element | MVision's Corresponding Infringing Feature |
| --- | --- |
| Receiving databases (backgrounds, 3D models, textures, camera files) | Receives MR images as backgrounds and anatomical libraries; blog post describes "real MR images as input" with implied 3D models for organ rendering. |
| Constructing synthetic scene (select background, 3D model with texture) | GAN generator constructs scenes using 3D modeling techniques; post mentions "generates synthetic CT images" with tissue densities (textures). |
| Placing virtual camera with settings | Applies virtual imaging parameters (e.g., CT simulation akin to camera intrinsics/calibration); post implies rendering with scanner-like settings. |
| Rendering projection as pixels | Outputs pixel-based synthetic CT; explicit in GAN |

| Claim #1 Element | MVision's Corresponding Infringing Feature |
|---|---|
| | description. |
| Appending to training dataset for ML vision task | Compiles for augmenting datasets; used for contouring (segmentation/task per Claim 5). |

26.    This chart demonstrates literal infringement. Even if not exact, equivalents apply: GAN rendering equates to a  graphics engine under the function-way-result test.   Under patent law, infringement occurs when a party practices every element of a claimed invention without authorization. See *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997)..

27.    Here, MVision's public disclosures provide substantial evidence that GBS Contour+ infringes Claim 1 literally or under the doctrine of equivalents. "[T]he substantial equivalent of a thing, in the sense of the patent law, is the same as the thing itself; so that if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape." See *Machine Co.* v. *Murphy,* 97 U. S. 120, 121 (1878).

## Direct Infringement

28.    Mvision directly infringes under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, and/or importing the GBS Contour+ software in the United States, including through customers in Texas and within this judicial district. Based on technical documentation and publicly available information, Mvision exercises

direct control over and performs each step of the claimed method through its development, testing, and deployment of the GBS Contour+ software, including the synthetic data generation features. *See Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022-23 (Fed. Cir. 2015); *Centripetal Networks, Inc. v. Cisco Systems, Inc.*, 38 F.4th 1025, 1033-34 (Fed. Cir. 2022).

## Induced Infringement

29.    On information and belief, Mvision actively induces infringement under 35 U.S.C. § 271(b) by specifically encouraging and providing detailed instructions to customers, including those in the United States and within this judicial district, to use its GBS Contour+ software in a manner that directly infringes the '272 Patent. Mvision provides technical documentation, user instructions, and other implementation resources that facilitate use of the synthetic data generation features corresponding to elements of the patented method.

30.    Mvision had actual knowledge of the '272 Patent at least as of June 9, 2025, when it received AIIA's demand letter. Despite this knowledge, Mvision continued to promote and support the use of GBS Contour+ in a manner that practices the claimed method.

31.    On information and belief, Mvision's publicly available promotional materials describe features of the GBS Contour+ software that align with the synthetic data generation capabilities claimed in the '272 Patent, including the use of MR data, anatomical modeling, and virtual imaging parameters to generate synthetic CT data for training purposes. These representations, coupled with

Mvision's targeted marketing of GBS Contour+ for medical imaging applications in the United States, support an inference of specific intent to encourage use of the software in a manner that infringes. *See Commil USA, LLC v. Cisco Systems, Inc.*, 575 U.S. 632, 644-46, 135 S.Ct. 1920, 191 L.Ed.2d 883 (2015); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1332 (Fed. Cir. 2016).

## Contributory Infringement

32.    On information and belief, Mvision contributes to infringement under 35 U.S.C. § 271(c) by offering and providing the synthetic data generation module within its GBS Contour+ software. Specifically, this module implements each element of Claim 1 of the '272 Patent as evidenced by Mvision's product documentation showing: (1) background selection functionality for synthetic image generation, (2) 3D modeling capabilities for medical imaging, (3) texture application features, and (4) configurable virtual imaging parameters for synthetic data creation.

33.    This module is exclusively designed and marketed for synthetic data generation in machine learning applications, with functionality that directly implements each element of the patented method. On further information and belief, this module is not a staple article of commerce and is not suitable for substantial non-infringing use, as it is designed for and marketed exclusively as part of Mvision's synthetic CT generation workflow for medical imaging. *See In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1337-38 (Fed. Cir. 2012); *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).

34.    AIIA is informed and believes, and on that basis alleges, that Mvision knew or should have known that its GBS Contour+ software was especially made or adapted to facilitate infringement of the '272 Patent, as evidenced by: (1) specific product documentation describing synthetic training capabilities that implement each element of Claim 1, (2) promotional materials demonstrating the software's specialized synthetic data generation features, and (3) technical specifications showing the module's dedicated purpose for medical imaging AI training. These materials suggest that the software was designed to achieve results aligned with the patented process and, based on current information, lacks substantial non-infringing uses. *See Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1357 (Fed. Cir. 2018).

## IRREPARABLE HARM AND CAUSAL NEXUS

35.    AIIA will suffer irreparable harm absent injunctive relief as a result of Mvision's ongoing infringement. AIIA and Mvision compete in the same field of medical imaging AI, particularly in developing and offering software solutions for generating synthetic image data to support machine learning applications. AIIA has invested millions of dollars in researching, developing, and patenting its synthetic data generation technology, which represents the foundation of its competitive position and commercial offerings in the medical imaging AI market.

36.    Mvision's unauthorized use of the patented method threatens to erode AIIA's market share, reduce licensing opportunities, and diminish the value of its

intellectual property, causing harm that cannot be fully remedied through monetary damages alone.

37.     Mvision's unauthorized use of AIIA's patented technology has directly caused quantifiable harm to AIIA, including documented erosion of market position, systematic pricing pressure, and significant loss of competitive advantage in the medical imaging AI sector. On information and belief, some healthcare customers have chosen Mvision's offering due in part to its synthetic data generation features. These developments have contributed to reputational harm and impaired AIIA's ability to command premium pricing based on its innovation. As a result, AIIA's ability to maintain its market position has been materially and irreparably harmed. Monetary damages alone are insufficient to address these cumulative harms. *See Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 641 (Fed. Cir. 2015); *Bio-Rad Labs. Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1378 (Fed. Cir. 2020).

38.     AIIA has sustained significant and irreparable economic harm from Mvision's infringing activities that cannot be adequately compensated by monetary damages alone. Based on AIIA's internal licensing efforts and understanding of procurement outcomes, healthcare systems within Texas and this judicial district have selected Mvision's competing product. Upon information and belief, procurement decision makers cited synthetic data generation capabilities corresponding to the '272 Patent as a key selection factor. These lost opportunities represent not just monetary losses, but lasting harm to AIIA's competitive position,

client relationships, and role in shaping innovation standards within the medical AI field.

## INJUNCTIVE RELIEF

39.    Under the four-factor test established in *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006), AIIA will suffer irreparable harm absent an injunction because Mvision's infringement directly causes AIIA to lose market share, customer relationships, and licensing opportunities in the AI medical imaging market.

40.    First, regarding irreparable harm: Mvision's unauthorized use of AIIA's patented synthetic training technology enables direct competition for the same hospital and healthcare provider customers, resulting in the loss of not only immediate sales but also long-term relationships and follow-on business. The specialized nature of medical AI implementations means these relationships, once lost, are extremely difficult to recover due to high switching costs and multi-year integration commitments.

41.    Second, monetary damages are inadequate because the harm extends beyond just lost sales to include price erosion, reputational damage, and lost market momentum in a rapidly evolving field.

42.    Third, the balance of hardships strongly favors AIIA because Mvision can implement non-infringing alternatives while AIIA faces permanent market displacement and damage to its innovation-based business model.

43.    Fourth, the public interest supports an injunction because protecting valid patent rights in medical AI technology encourages continued investment in healthcare innovation that ultimately benefits patients. *See Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 641 (Fed. Cir. 2015).

## WILLFUL INFRINGEMENT

44.    Mvision's alleged infringement is willful and egregious under *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 136 S. Ct. 1923, 195 L.Ed.2d 278 (2016). On information and belief, Mvision had pre-suit knowledge of the '272 Patent based on publicly available indicators of its industry monitoring, such as attendance at medical imaging conferences and review of competitor offerings.

45.    Despite having knowledge of the '272 Patent since at least June 9, 2025, Mvision continued marketing and deploying features that align with the patented technology, without seeking a license or altering its software. Its post-filing conduct—including the continued promotion and use of the accused synthetic training features—demonstrates deliberate disregard for AIIA's patent rights. Such behavior supports a finding of willfulness and may justify enhanced damages under 35 U.S.C. § 284. *See SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1308 (Fed. Cir. 2019).

## COUNT I: PATENT INFRINGEMENT

**(Violation of 35 U.S.C. § 271(a) – Direct Infringement of U.S. Patent No. 11,257,272)**

46.    Plaintiff AIIA incorporates by reference the allegations set forth in Paragraphs one (1) through forty-five (45) as if fully restated herein.

47.   Plaintiff is the owner of U.S. Patent No. 11,257,272. This Patent claims methods for generating synthetic image data used to train machine learning models.

48.   On information and belief, Defendant's infringement includes unauthorized replication of Plaintiff's patented methods without license or permission.

49.   Defendant's infringement is willful, knowing, and intentional, as it was aware of Plaintiff's patent rights through the June 9, 2025, demand letter, and has continued to infringe despite this knowledge.

50.   As a result of Defendant's infringement, Plaintiff has suffered damages, including lost profits, lost market share, price erosion, and irreparable harm to its reputation. Plaintiff seeks enhanced damages under 35 U.S.C. § 284, attorneys' fees under 35 U.S.C. § 285, and injunctive relief to prevent further infringement.

WHEREFORE, Plaintiff, AIIA, respectfully seeks the following relief:

(1)   An award of damages to compensate AIIA for Mvision's alleged infringement of the '272 Patent, including lost profits and reasonable royalties, pursuant to 35 U.S.C. § 284;

(2)   A permanent injunction under 35 U.S.C. § 283 enjoining Mvision from further acts of infringement; and

(3)   An award of attorneys' fees under 35 U.S.C. § 285 based on the exceptional nature of this case.

## COUNT II: PATENT INFRINGEMENT

### (Violation of 35 U.S.C. § 271(b) – Induced Infringement)

51.    Plaintiff AIIA incorporates by reference the allegations set forth in Paragraphs one (1) through fifty (50) as if fully restated herein.

52.    Defendant has indirectly infringed and continues to indirectly infringe the Patent by inducing others to directly infringe, literally and/or by the doctrine of equivalents.

53.    Defendant has taken active steps, directly, indirectly, or through contractual relationships with others, with the specific intent to cause them to use its product in a manner that infringes one or more claims of the Patent. Such steps include distributing labels and instructions, advertising and promoting the product in an infringing manner, and providing technical support for infringing use.

54.    Defendant has been performing these steps with the knowledge of the Patent since at least June 9, 2025, and with the knowledge and specific intent that the induced acts constitute infringement.

55.    Defendant's infringement of the Patent is ongoing.

56.    As a result of Defendant's induced infringement, Plaintiff has suffered damages, including lost profits, lost market share, price erosion, and irreparable harm to its reputation. Plaintiff seeks enhanced damages, attorneys' fees, and injunctive relief.

WHEREFORE, Plaintiff, AIIA, respectfully seeks the following relief:

(1)    An award of damages to compensate AIIA for Mvision's alleged infringement of the '272 Patent, including lost profits and reasonable royalties, pursuant to 35 U.S.C. § 284;

(2)    A permanent injunction under 35 U.S.C. § 283 enjoining Mvision from further acts of infringement; and

(3)    An award of attorneys' fees under 35 U.S.C. § 285 based on the exceptional nature of this case.

## COUNT III: PATENT INFRINGEMENT

### (Violation of 35 U.S.C. § 271(c) – Contributory Patent Infringement)

57.    Plaintiff AIIA incorporates by reference the allegations set forth in Paragraphs one (1) through fifty-six (56) as if fully restated herein.

58.    Defendant has indirectly infringed and continues to indirectly infringe the Patent by contributing to the infringement of the Patent.

59.    Defendant's product has special features designed for infringing use, including label instructions, and has no substantial non-infringing uses. These features constitute a material part of the invention.

60.    Defendant has materially contributed to third parties' infringement of the Patent by making, distributing, offering for sale, and selling the product for use in a manner that infringes one or more claims of the Patent.

61.    Defendant's contributory infringement is ongoing.

62.    As a result of Defendant's contributory infringement, Plaintiff has suffered damages, including lost profits, lost market share, price erosion, and irreparable harm to its reputation. Plaintiff seeks enhanced damages, attorneys' fees, and injunctive relief.

WHEREFORE, Plaintiff respectfully seeks the following relief:

(1)    An award of damages to compensate AIIA for Mvision's alleged infringement of the '272 Patent, including lost profits and reasonable royalties, pursuant to 35 U.S.C. § 284;

(2)    A permanent injunction under 35 U.S.C. § 283 enjoining Mvision from further acts of infringement; and

(3)    An award of attorney's fees under 35 U.S.C. § 285 based on the exceptional nature of this case.

## COUNT IV: INJUNCTIVE RELIEF

63.    Plaintiff AIIA incorporates by reference the allegations set forth in Paragraphs one (1) through sixty-two (62) as if fully restated herein.

64.    AIIA is entitled to a preliminary injunction pursuant to 35 U.S.C. § 283 and Federal Rule of Civil Procedure 65. A preliminary injunction is appropriate where the plaintiff demonstrates:

A.    A likelihood of success on the merits;

B.    A likelihood of irreparable harm in the absence of preliminary relief;

C.    That the balance of equities favors the plaintiff; and

D.    That an injunction serves the public interest.

*See eBay Inc. v. MercExchange*, 547 U.S. 388, 391 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006); *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1202 (Fed. Cir. 2017); *Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 926–30 (Fed. Cir. 2012).

65.    52.    Based on the specific facts alleged above regarding AIIA's patent rights, competitive position, and Mvision's conduct, AIIA satisfies each element required for a preliminary injunction:

**Success on the Merits:**

- Mvision's GBS Contour+ product directly infringes Claim 1 of the '272 Patent by implementing each element of the claimed synthetic data training method in its software. Mvision also indirectly infringes through inducement under 35 U.S.C. § 271(b) by knowingly providing detailed instructions and actively encouraging customers to use the infringing features, with specific knowledge of the '272 Patent and clear intent that customers perform the patented method. Additionally, Mvision contributes to infringement under 35 U.S.C. § 271(c) by providing specialized software components that have no substantial non-infringing uses, as evidenced by Mvision's own product documentation. The '272 Patent is presumed valid, and no substantial question of invalidity has been raised. *See Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1205 (Fed. Cir. 2017); *Blephex, LLC v. Myco Indus., Inc.*, 24 F.4th 1391, 1399 (Fed. Cir. 2022).

- AIIA faces concrete and irreparable harm from Mvision's continued use of the patented synthetic data training method. Specifically, AIIA suffers ongoing harm through lost licensing opportunities, erosion of market share, and diminished reputation in the medical imaging AI market. The relationship-driven and highly specialized nature of this market means that these losses, particularly in customer relationships and market position, cannot be adequately quantified or remedied through monetary damages alone. See Apple Inc. v. Samsung Elecs. Co., 809 F.3d 633, 641 (Fed. Cir. 2015); Douglas Dynamics, LLC v. Buyers Prods. Co., 717 F.3d 1336, 1344 (Fed. Cir. 2013).

- The balance of hardships favors AIIA. While Mvision would only need to temporarily suspend specific infringing features of its product, AIIA continues to suffer permanent and irreversible damage to its core market position and licensing model. Mvision, by contrast, has the resources and technical capabilities to pursue non-infringing alternatives. See i4i Ltd. P'ship v. Microsoft Corp., 598 F.3d 831, 862 (Fed. Cir. 2010).

- The public interest strongly favors injunctive relief because: (1) protecting valid patents in the AI medical sector encourages innovation and ensures continued investment in life-saving technologies, (2) maintaining strong intellectual property rights is particularly crucial in the emerging field of medical AI where development costs are

substantial, and (3) the requested injunction would not disrupt patient care as alternative non-infringing products remain available in the market. While temporary competitive disruption may occur, the long-term benefits of patent protection outweigh any short-term effects. *See Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1331 (Fed. Cir. 2008).

66.    Pursuant to Fed. R. Civ. P. 65(d), AIIA respectfully requests that the Court enter a preliminary injunction enjoining Defendant, its officers, agents, servants, employees, and all persons in active concert or participation with them, from engaging in the following acts during the pendency of this action:

- Manufacturing, marketing, distributing, selling, or licensing the GBS Contour+ software, or any product not more than colorably different from it, that incorporates the accused synthetic data generation features;

- Encouraging, instructing, or enabling customers to use the GBS Contour+ software in a manner that practices the patented method;

- Publishing documentation or promotional materials that depict or endorse the use of the accused synthetic data generation features.

WHEREFORE, Plaintiff, AIIA, respectfully seeks the following relief:

(1)    An award of damages to compensate AIIA for Mvision's alleged infringement of the '272 Patent, including lost profits and reasonable royalties, pursuant to 35 U.S.C. § 284;

(2)    A permanent injunction under 35 U.S.C. § 283 enjoining Mvision from further acts of infringement; and

(3)    An award of attorney's fees under 35 U.S.C. § 285 based on the exceptional nature of this case.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that the Court enter judgment in its favor and grant the following relief:

A.    Enter judgment that Defendant has infringed one or more claims of U.S. Patent No. 11,257,272 under 35 U.S.C. §§ 271(a), (b), and/or (c);

B.    Enter a preliminary and permanent injunction under 35 U.S.C. § 283 and Fed. R. Civ. P. 65, enjoining Defendant, its officers, agents, employees, and all persons acting in concert with them, from continued infringement of U.S. Patent No. 11,257,272 through the manufacture, marketing, distribution, or support of the GBS Contour+ software or any product not more than colorably different.

Plaintiff has begun to suffer irreparable harm, including loss of market position, erosion of customer relationships, and diminished licensing opportunities in the medical AI software sector.

Plaintiff asserts that these harms cannot be adequately remedied by monetary damages and are likely to continue absent injunctive relief, warranting equitable intervention, consistent with *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633 (Fed. Cir. 2015) and *eBay Inc. v. MercExchange*, 547 U.S. 388, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006);

C.  Award damages adequate to compensate for Defendant's infringement, including lost profits and reasonable royalties, and, if supported by discovery, enhanced damages under 35 U.S.C. § 284. Plaintiff believes Defendant received pre-suit notice of the '272 Patent on June 9, 2025, and continued infringing conduct thereafter. Plaintiff further alleges, on information and belief, that Defendant copied features of the patented technology despite knowing of the patent and failed to implement available non-infringing alternatives. Plaintiff reserves the right to supplement the record with specific documentation supporting these allegations during discovery;

D.  Award attorney's fees and taxable costs incurred in this action;

E.  Award pre- and post-judgment interest as permitted by law;

F.  Award reasonable attorney's fees and costs under 35 U.S.C. § 285, should the Court find this case exceptional based on the totality of Defendant's conduct;

G.  Award damages for Defendant's infringement, including lost profits and reasonable royalties, pursuant to 35 U.S.C. § 284; and

H.    Grant such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.


Respectfully submitted,

GOLDEN LAW, P.C.
Independence Plaza II, Suite 250
14350 Northbrook Drive
San Antonio, TX 78232
(210) 495-0900
(210) 495-0997 (fax)
golden@goldenlaw.net


*/s/ Robert E. Golden*

By:_____
        Robert E. Golden
        Texas Bar No. 08085560

ATTORNEY FOR PLAINTIFF