IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ARTIFICIAL INTELLIGENCE IMAGING ASSOCIATION, INC.,<br><br>Plaintiff,<br><br>v.<br><br>MVISION AI, INC.,<br><br>Defendant. | ) | Civil Action No. 5:25-CV-01370-OLG |

**DEFENDANT MVISION AI, INC.'S MOTION TO DISMISS THE COMPLAINT UNDER 35 U.S.C. §101**

Defendant MVision AI, Inc. ("MVision"), by and through their undersigned counsel, respectfully moves this Court to dismiss the complaint (Dkt. No. 1) under Rule 12(b)(6) because the Asserted Patent does not claim patent-eligible subject matter under 35 U.S.C. §101.

## I. THE COMPLAINT AND ASSERTED PATENT

On September 3, 2025, Plaintiff Artificial Intelligence Imaging Association, Inc. ("AIIA") filed an action in the Middle District of Florida, alleging infringement of U.S. Patent No. 11,257,272 ("the '272 Patent") against MVision, alleging that GBS Contour+ software infringed the '272 Patent. After a motion to dismiss was filed by MVision challenging venue and service, AIIA dismissed its complaint, only to refile a similar complaint in this Court on October 24, 2025. (Doc. No. 1.) Like before, AIIA accuses MVision's GBS Contour+ software of infringing the '272 Patent.

The '272 Patent purports to describe claims for "Generating Synthetic Image Data for Machine Learning." The only claim of the '272 Patent referenced in the complaint is claim 1,

which is directed to the abstract idea of a method for generating synthetic image data by capturing a camera view of a synthetic image scene. Claim 1 offers nothing more than using complex language to reference conventional 3D graphics and rendering techniques—constructing virtual scenes, placing 3D objects, varying camera parameters, and rendering images and associated data channels—generating "synthetic" image data for use as training data in machine-learning models. While the convoluted language of claim 1 suggests a complicated and sophisticated invention, the asserted claim actually recites a data-generation pipeline implemented on generic computer hardware (a processor) using conventional software. Claim 1 does not purport to improve any camera, display, storage medium, graphics engine, or machine-learning model. The only physical structure recited is a "processor," which the specification explains can be essentially any type of general-purpose circuitry:

> In some embodiments, the processor 113 comprises an arithmetic logic unit, a microprocessor, a general purpose controller, digital signal processors (DSPs), programmable controllers, application specific integrated circuits (ASICs), programmable logic devices (PLDs), logical circuitry, or some other processing elements configured to execute software code, manipulate data structures, perform computations, send and receive data from memory, generate image data, provide electronic display signals to a display 116 and/or otherwise process image data.

'272 Patent, 9:61-10:3. While all of the steps require software/firmware to select, capture, exchange, render and append images, there is no meaningful description of the hardware or software needed to perform these conventional processing steps. Instead, in the specification of the '272 patent the applicants routinely referred to *any* "set of instructions executable by the processor." *See, e.g*. '272 Patent, 13:1, 15:6, 24:38, 33:7, 34:40, 36:5, 37:45. The claim offers no inventive concept, no means to solve a recognized problem, and nothing more than the use of well-known circuitry and software. Boiled down, the claim calls for image manipulation on a general-purpose computer. While a fine concept, it is nothing more than an abstract idea and does not

qualify as patentable subject matter.

## II. LEGAL STANDARD

The Federal Circuit has "repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion." *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373-74 (Fed. Cir. 2016). Section 101 states a patent may be granted on "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof… subject to the conditions and requirements of this title." 35 U.S.C. § 101. Courts "must distinguish patents that claim the 'buildin[g] block[s]' of human ingenuity, which are ineligible for patent protection, from those that integrate the building blocks into something more." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014) (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 89 (2012)). "[L]aws of nature, natural phenomena, and abstract ideas" are not eligible for patent protection. *Diamond v. Diehr*, 450 U.S. 175, 185 (1981). The Supreme Court's authority warns against upholding patents that "would risk disproportionately tying up the use of the underlying natural laws, inhibiting their use in the making of further discoveries." *Mayo*, 566 U.S. at 72-73.

The Supreme Court has provided a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 573 U.S. at 217. The first step is to ask, "whether the claims at issue are directed to one of those patent-ineligible concepts." *Id*. For computer-related inventions, step one asks "whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). "[W]e have treated analyzing information by steps people go through in their minds, or by mathematical algorithms, without more, as essentially mental processes

within the abstract-idea category." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016). If the claims are directed to one of the exceptions, the second step is to look for an "inventive concept" that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the natural law itself." *Mayo*, 566 U.S. at 72-73. "If the elements involve well-understood, routine, [and] conventional activity previously engaged in by researchers in the field, [] they do not constitute an inventive concept." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018) (quotation omitted). The Section 101 analysis may be performed on a representative claim. *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n,* 776 F.3d 1343, 1348 (Fed. Cir. 2014).

## III. THE '272 PATENT DOES NOT RECITE PATENT ELIGIBLE CLAIMS

### A. Claim 1 is Representative of the Claims of the '272 Patent

As a threshold matter, the § 101 analysis may be performed on claim 1, which is representative of the claims in the '272 patent and the only one referenced in the complaint. *See Content Extraction*, 776 F.3d at 1348 ("The district court, however, correctly determined that addressing each claim of the asserted patents was unnecessary" where claim 1 was "representative" because "all the claims are substantially similar and linked to the same abstract idea"). In total there are only three independent claims in the '272 patent. Claim 1 states:

> 1. A method for generating a synthetic image data by capturing a camera view of a synthetic image scene, the method comprising:
>
> receiving, by a processor, a database of background images, an object database including 3D models, a library of texture materials, and a library of camera setting files; constructing a synthetic image scene rendered by a graphics rendering engine, the constructing comprising: selecting a background image from the database of background images and arranging the background image in a background portion of the synthetic image scene;
>
> selecting a 3D model from the object database and arranging the 3D model in a foreground portion of the synthetic image scene; and covering the 3D model

with a texture material selected from the library of texture materials;

placing a virtual camera in the foreground portion of the synthetic image scene, the virtual camera capturing the camera view of the synthetic image scene contained in an image plane defined by a camera settings file having camera position data, camera intrinsics, camera calibration settings, and camera capture settings;

rendering projection coordinates included in the image plane as pixel coordinates of a synthetic image; and

appending the synthetic image to a training dataset comprising synthetic images having a common image scene class, wherein the training dataset is used for training a machine learning system to perform a computer vision task.

(Doc. No. 1, ¶25; Ex. 1 to Comp., Cl. 1.) Unasserted claim 13 is directed to a method of a pair of synthetic images, analogous to much of the claim language in claim 1. Unasserted claim 17 is to generating synthetic image data, like claim 1, but it does so for two image scenes.

B. <u>Claim 1 is an Abstract Idea Under Step 1 of the *Alice* Analysis</u>

Under step one of the *Alice* analysis, the question is whether claim 1 is directed to a technological improvement or an abstract idea. See *Affinity Labs of Tex. v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016). A claim is directed to an abstract idea, if it "consist[s] only of generalized steps to be performed on a computer using conventional computer activity," and does not explain "specific improvement to the way" the technology operates. *Id*. at 1260; *see also Enfish*, 822 F.3d at 1336. In *Affinity Labs*, the claims were "directed to streaming regional broadcast signals to cellular telephones located outside the region served by the regional broadcaster." *Affinity Labs*, 838 F.3d at 1255. The Federal Circuit recognized the claims reflected an abstract idea because they related to "the conveyance and manipulation of information using wireless communication and computer technology," using conventional components (a cellular telephone, user interface and broadcasting system) in conventional ways. *Affinity Labs*, 838 F.3d at 1261.

There are numerous decisions directed to digital image methods such as those at issue in this case. In *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1353 (Fed. Cir. 2023), the patent at issue was directed to viewing multiple video images, and included steps of receiving, digitizing, displaying, converting, storing and transmitting images. The Federal Circuit acknowledged prior holdings that "encoding and decoding image data and . . . converting formats, including when data is received from one medium and sent along through another, are by themselves abstract ideas." *Adaptive Streaming Inc. v. Netflix, Inc.*, 836 F. App'x 900, 903 (Fed. Cir. 2020) (unpublished, collecting cases). While the plaintiff argued the claims were "a solution to a technical problem" and "change the nature of the data," the Federal Circuit held the claims did not recite a concrete solution, but were directed to abstract data manipulation. *See Hawk Tech.*, 60 F.4th at 1357-1358.

In *In re TLI Communications LLC Patent Litigation*, 823 F.3d 607, 610 (Fed. Cir. 2016), the claimed invention was directed to a "method for recording and administering digital images," which required "recording images using a digital pick up unit in a telephone unit," storing the recorded images as digital images, then transmitting the images and associated classification information to a server that stored the images based on the classification information. In finding the claims directed to an abstract idea, the *TLI* court contrasted claims that are directed to an improvement in computer functionality with claims that "simply add[] conventional computer components to well-known business practices" or consist only of "generalized steps to be performed on a computer using conventional computer activity." *Id.* at 612. Importantly, the specification for the claims at issue in *TLI* did "not describe a new telephone, a new server, or a new physical combination of the two," but instead "describe[d] the system and methods in purely functional terms." *Id*. Thus, the claims were directed to an abstract idea rather than being "directed

to a solution to a 'technological problem.'" *Id*. at 613. In *Sanderling Mgmt. v. Snap Inc*., 65 F.4th 698, 703 (Fed. Cir. 2023), the Federal Circuit considered claims directed to digital image processing and affirmed the patent's invalidity where the claims were directed to "digital imaging processing based on a distribution rule that determines when a condition is met."

Like in *Affinity Labs., Hawk Tech.*, *in re TLI* and others, there is no description of new technology or a new technological problem in the '272 patent, but instead the use of conventional computer components to retrieve images and image data, then to merge that data to generate an image for machine learning systems. Claim 1 of the '272 patent also fails the step one inquiry because it is directed to results without explaining *how* to achieve the results. *See IOENGINE, LLC v. PayPal Holdings, Inc*., 607 F. Supp. 3d 464, 484 (D. Del. 2022) (holding that "§ 101 prevents patenting a result where it matters not by what process or machinery the result is accomplished.") The first element of claim 1 recites the only structure required for the claimed method, namely a general purpose "processor." ('272 patent, 9:61-10:22.) After that, the elements of claim 1 are wished for results from operating the processor as conventionally operated, whether for "receiving" databases and files, "selecting" images and "arranging" them with image textures, "capturing" a synthetic image scene, "rendering" coordinates for the synthetic image, and transferring the synthetic image to a dataset for computer learning. For example, claim 1 requires (among other steps) "selecting" a background image and 3D model from databases "arranging" the background image and 3D model in "the synthetic image scene…" but the claim does not specify how or why a particular image or model would be selected or arranged beyond relying on a conventional processor and software. Indeed, the steps recited in claim 1 refer to results (such as receiving, selecting, covering, capturing, etc.) but never include any limitation on how such processing occurs to achieve the results.

Similarly, in *Univ. of Fla. Research Found., Inc. v. GE Co*., 916 F.3d 1363, 1366 (Fed. Cir. 2019), the claim at issue involved a method of using a "computing device" to convert data for physiologic treatment and presenting it on a user interface. The Federal Circuit affirmed dismissal under *Alice*, holding that the "claims do no 'more than simply instruct the practitioner to implement the abstract idea . . . on a generic computer." *Id*., at 1369, quoting *Alice*, 573 U.S. at 225. Where "[t]he claims do no more than describe a desired function or outcome, without providing any limiting detail that confines the claim to a particular solution to an identified problem [the] purely functional nature of the claim confirms that it is directed to an abstract idea, not to a concrete embodiment of that idea." *Affinity Labs of Tex., LLC v. Amazon.com, Inc*., 838 F.3d 1266, 1269 (Fed. Cir. 2016). Notably, even if the specification articulated "how" the conventional circuitry/software performed the function, that would not alter the outcome because those details are missing from the claim. *See ChargePoint, Inc. v. SemaConnect, Inc*., 920 F.3d 759, 769-70 (Fed. Cir. 2019) (claims found ineligible, "[e]ven if [the] specification had provided, for example, a technical explanation of how to enable communication over a network for a device interaction . . . the claim language here would not require those details"); *Intellectual Ventures I LLC v. Symantec Corp*., 838 F.3d 1307, 1315-16 (Fed. Cir. 2016) (claims found ineligible where "the asserted claims do not contain any limitations that address" the problems discussed in the specification). Here, the inventor used lots of words to suggest sophistication, but left no doubt that all that the claims require is envisioned is a conventional computer, and that no specific computer code was required. Indeed, the inventor explained the any processor could be used to execute any software capable of performing the desired functions, with "[t]he synthetic image generation system 101 may contain one or more software modules for providing the functionality described [herein]." ('272 patent, 12:44-46.) The specification also includes high level flowcharts

with no details on <u>how</u> to achieve any recited function, offering no help to Plaintiff. *See Affinity Labs of Tex.*, 838 F.3d at 1260 ("Nothing in the flow charts or the text of the specification provides any details regarding the manner in which the invention accomplishes the recited function."); *see also All Terminal Servs., LLC v. Roboflow, Inc.*, Civil Action No. 25-476-WCB, 2025 U.S. Dist. LEXIS 173305, at *26 (D. Del. Sep. 5, 2025)). Because claim 1 of the '272 patent recites the function of selecting, capturing, exchanging, rendering and appending images using a conventional processor and software, with no details or meaningful limitation on how such functions are accmplished, it claims an abstract idea.

### C. <u>Claim 1 Does Not Reflect an Inventive Concept Under Step 2 of the *Alice* Analysis</u>

Proceeding under the second *Alice* step, the question is whether "the claims do significantly more than simply describe [the] abstract method and thus transform the abstract idea into patentable subject matter." *Affinity Labs*, 838 F.3d at 1262 (citing *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) (internal quotation marks omitted)). If the claim "rel[ies] on the use of existing technology to create a computerized version" of the idea, "and do[es] not focus on a specific means or method that improves the relevant technology," or the "functioning of the computer itself," it does not transform the abstract idea into patentable subject matter. *Wisner v. Google LLC*, 51 F.4th 1073, 1082-3 (Fed. Cir. 2022); *Alice*, 573 U.S. at 225; *Recentive Analytics, Inc. v. Fox Corp.*, 134 F.4th 1205, 1215 (Fed. Cir. 2025) (finding patents directed to "using machine learning to dynamically generate optimized maps and schedules based on real-time data and update them based on changing conditions" failed to recite an inventive step). Put more simply, "the components must involve more than performance of well-understood, routine, conventional activities previously known in the industry." *In re TLI*, 823 F.3d at 613. "[T]he district court need not accept a patent owner's conclusory allegations of inventiveness." *IBM v. Zillow Grp., Inc.*, 50

F.4th 1371, 1379 (Fed. Cir. 2022).

"To save a patent at step two, an inventive concept must be evident in the claims." *Secured Mail Sols., LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 911 (Fed. Cir. 2017). Here, claims themselves use generic functional language and conventional components, which cannot overcome abstraction in step 2. *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017) ("[C]laim 1 here only uses generic functional language to achieve [any] purported solutions."). The '272 patent does not describe how to improve existing technology or computer functionality; instead, it admits it can be accomplished with *any* kind of "processor" along with *any* "set of instructions executable by the processor." *See, e.g*. '272 Patent, 13:1, 15:6, 24:38, 33:7, 34:40, 36:5, 37:45. This is analogous to the recitation of generic components considered in *Intellectual Ventures I LLC v. Erie Indem. Co*., 850 F.3d 1315, 1330 (Fed. Cir. 2017). There, the patent claim recited a system for storing and accessing resources comprising a network for accessing resources and information in a network server, a local device with a local memory, and a mobile interface, and the Federal Circuit held the mere recitation of generic components (software, hardware, or firmware) to perform an abstract idea was insufficient because the claim was "so lacking in implementation details." *Id*. at 1331. Similarly, in *Hawk Tech.*, where the asserted claims were directed specifically to digital images, the Federal Circuit recognized there was no inventive concept: "[n]othing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information." *Hawk Tech*., 60 F.4th at 1359, quoting *Elec. Power Grp*., 830 F.3d at 1355.

Importantly, nothing in the complaint provides "concrete allegations" that "individual elements and the claimed combination are not well-understood, routine, or conventional activity."

*Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018). To the contrary, other than alleging that the '272 patent claims "methods for generating synthetic image data used to train machine learning models," the complaint fails to allege any basis to conclude the claims transform the abstract idea into patentable subject matter. As such, the '272 patent fails to overcome step 2 of *Alice*.

D. Claim Construction is Not Required to Resolve the Issue

The '272 patent claims broad concepts and only describes conventional technologies. Therefore, no claim construction is required to rule the claims patent ineligible at this stage. The Federal Circuit has "repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced." *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017).

E. Nothing in the Prosecution History Addressed the Same Issue

Occasionally court decisions have relied on the prosecution history to establish an inventive step under the *Alice* framework. *See, e.g., OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015). However, there is no indication that the question of §101 was ever raised during or addressed during the prosecution.

F. An Amendment Would be Futile

A party may properly allege that individual elements of a claim are not well understood, routine, or conventional that could create an issue of fact precluding a §101 challenge at the motion to dismiss stage. *See Berkheimer v. HP Inc.*, 890 F.3d 1369, 1372 (Fed. Cir. 2018); *Aatrix Software,* 882 F.3d at 1128. Here no such allegations are made. More importantly, given the unequivocal statements in the '272 patent that all components identified are necessarily conventional, whether by reference to any conventional processor or any software to perform the

claimed function, allegations to the contrary in an amendment cannot save the '272 patent from invalidity. Finally, MVision notified Plaintiff of its intent to move to dismiss, and Plaintiff opted not to amend its pleadings and is now precluded from doing. *See* Standing Order in Civil Cases, Dkt. 8, p. 1 ("[T]he Plaintiff will not be allowed an additional opportunity to amend the Complaint following the grant of a properly filed Rule 12(b)(6) Motion to Dismiss."). As such, Plaintiff is precluded from amendment and no leave should be granted to Plaintiff to amend the complaint in response to this motion.

## IV. CONCLUSION

Claims directed to digital image manipulation on a general-purpose computer using conventional software are abstract and not patentable. The courts have recognized, time and again, that such claims are invalid, and nothing can save the '272 patent. The '272 patent should be found invalid under §101, and the action dismissed with prejudice under Rule 12(b)(6).

DATED: December 16, 2025

*/s/ Brian R. Gilchrist*
Brian R. Gilchrist
TX Bar No. 07904795
FL Bar No. 774065
bgilchrist@allendyer.com
**ALLEN, DYER, DOPPELT + GILCHRIST, P.A.**
255 South Orange Avenue, Suite 1401
Orlando, Florida 32801
Telephone: (407) 841-2330
Facsimile: (407) 841-2343

*Attorneys for Defendant*

## CERTIFICATE OF CONFERENCE

I hereby certify that on November 21, 2025, counsel for MVision notified Plaintiff's counsel via email of MVision's intent to file a Rule 12(b)(6) motion under *Alice* and of Plaintiff's opportunity to amend or file an Advisory of its intent to amend. A copy of this notification is attached as Exhibit A to my attached Declaration. Plaintiff failed to timely amend to correct the deficiency as required by the Court's Standing Order.

*/s/ Brian R. Gilchrist*
Brian R. Gilchrist

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2025, I electronically filed the foregoing document using the Case Management/Electronic Case Filing ("CM/ECF") system, which will send a notice of electronic filing to all counsel of record.

*/s/ Brian R. Gilchrist*
Brian R. Gilchrist