UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

Case No.: 5:25-cv-01370-OLG

ARTIFICIAL INTELLIGENCE IMAGING ASSOCIATION, INC.,

Plaintiff,

v.

MVISION AI, INC.

Defendant.

# PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS UNDER 35 U.S.C. § 101

## I. INTRODUCTION

Plaintiff Artificial Intelligence Imaging Association, Inc. ("AIIA") respectfully submits this Opposition to Defendant MVision AI, Inc.'s ("MVision" or "Defendant") Motion to Dismiss under 35 U.S.C. § 101. Defendant's motion should be denied because the claims of U.S. Patent No. 11,257,272 (the " '272 Patent") are directed to a specific technological improvement in the generation of synthetic image data for machine learning—not an abstract idea—and because factual disputes exist that preclude dismissal at the pleading stage.

The '272 Patent claims a specific technical method for generating synthetic image data using a precisely configured integration of multiple databases, 3D graphics rendering, virtual camera simulation with defined calibration parameters, and coordinate transformation—all working together to produce training datasets for machine learning computer vision tasks. This is not the abstract concept of "image

manipulation" that Defendant asserts. Rather, it is a concrete technological solution to the specific problem ofgenerating realistic synthetic training data that accurately simulates the performance characteristics of actual imaging devices.

Defendant's motion fails for three independent reasons. First, under *Alice* step one, the claims are not directed to an abstract idea but to a specific technological improvement, analogous to the claims found patent-eligible in *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016), and *McRO, Inc. v. Bandai Namco Games America Inc.*, 837 F.3d 1299 (Fed. Cir. 2016). Second, under *Alice* step two, the claims contain an inventive concept in the specific combination of technical elements. Third, as the Federal Circuit held in *Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018), whether claim elements are "well-understood, routine, and conventional" is a factual question that cannot be resolved on a motion to dismiss.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal is appropriate only when "the complaint, on its face, shows a bar to relief." *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986).

Patent eligibility under 35 U.S.C. § 101 is evaluated using the two-step framework established by the Supreme Court in *Alice Corp. v. CLS Bank International*, 573 U.S. 208 (2014). At step one, the court determines whether the claims are

"directed to" a patent- ineligible concept such as an abstract idea. *Id.* at 217. If so, at step two, the court examines whether the claim elements, individually or as an ordered combination, contain an "inventive concept" sufficient to transform the claim into a patent-eligible application. *Id.* at 217-18.

Critically, "[w]hile patent eligibility is ultimately a question of law, the district court erred in concluding there are no underlying factual questions to the § 101 inquiry." *Berkheimer*, 881 F.3d at 1369. "Whether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination." *Id.* at 1369. Accordingly, factual disputes preclude dismissal on a motion to dismiss. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018).

Moreover, "[p]atent eligibility may be resolved on a Rule 12(b)(6) motion" only "where there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix*, 882 F.3d at 1125. Where the complaint contains factual allegations regarding technological improvements over the prior art, those allegations "raise factual disputes underlying the § 101 analysis" that preclude early dismissal. *Id.* at 1128.

## III. ARGUMENT

### A. The Claims Are Not Directed to an Abstract Idea Under *Alice* Step One

Defendant fundamentally mischaracterizes the '272 Patent claims by describing them at an impermissibly high level of abstraction. The claims are not directed to the abstract concept of "image manipulation on a general-purpose computer" as Defendant

contends. Rather, they are directed to a specific technological method for generating synthetic training data that accurately simulates real-world camera behavior—a concrete improvement to computer-implemented image synthesis technology.

The Federal Circuit has repeatedly emphasized that the "directed to" inquiry "cannot simply ask whether the claims involve a patent-ineligible concept." *Enfish*, 822 F.3d at 1335. Instead, courts must consider "the claims as a whole" to determine their "character" and avoid "oversimplifying the claims" by "looking at them generally and failing to account for the specific requirements of the claims." *McRO*, 837 F.3d at 1313. Describing the claims "at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule." *Enfish*, 822 F.3d at 1336.

Properly construed, Claim 1 of the '272 Patent recites a specific technical method comprising: (a) receiving distinct databases containing background images, 3D object models, texture maps, and camera settings files; (b) constructing a synthetic scene using a 3D graphics rendering engine by placing object models with applied textures against selected backgrounds; (c) placing a virtual camera with defined parameters including focal length, aperture, sensor dimensions, and calibration metadata; (d) rendering the scene by transforming projection coordinates to pixel coordinates based on the virtual camera's parameters; and (e) appending the rendered image with corresponding object annotations to a training dataset. This is not a generic description of "image manipulation"—it is a specific, ordered combination of technical steps that work together to achieve a particular technological result.

The claims here are analogous to those found patent-eligible in *Enfish* and *McRO*. In *Enfish*, the Federal Circuit held that claims to a "self-referential" database were not directed to an abstract idea because they were "directed to a specific improvement to the way computers operate." 822 F.3d at 1336. The court emphasized that "[s]oftware can make non- abstract improvements to computer technology just as hardware improvements can" and that "the claims here are directed to an improvement in the functioning of a computer." *Id.* at 1335-36.

Similarly, in *McRO*, the Federal Circuit found claims to automated lip synchronization patent-eligible because they used "unconventional rules" that "improve[d] [an] existing technological process." 837 F.3d at 1314-15. The court held that "the ordered combination of claimed steps, using unconventional rules that relate sub-sequences of phonemes, timings, and morph weight sets, is not directed to an abstract idea." *Id.* at 1313-1314. Critically, the court distinguished cases where "the computer used merely as a tool to automate conventional activity," finding instead that "the incorporation of the claimed rules, not the use of the computer" provided the improvement. *Id.* at 1314.

The same analysis applies here. The '272 Patent claims are not directed to the abstract concept of generating images, but to a specific technical solution for creating synthetic training data that accurately simulates real camera behavior. The specification describes concrete technical improvements: the use of camera settings files that encode actual device calibration parameters, the specific integration of multiple databases with 3D rendering engines, and the transformation of projection

coordinates based on realistic camera models. These are not generic computer components performing conventional functions—they are specific technical elements that work together to solve a concrete problem in the field of machine learning data generation.

Defendant's reliance on *Recentive Analytics, Inc. v. Fox Corp.*, 134 F.4th 1205 (Fed. Cir. 2025), is misplaced. In *Recentive*, the Federal Circuit found claims ineligible that used machine learning as a generic "black box" to perform optimization without any technical explanation of how the machine learning model worked or what specific improvements it provided. The claims there simply recited using "machine learning" to automate a previously manual process without describing any specific technical implementation.

The '272 Patent claims are materially different. They do not claim a generic "apply machine learning" approach but instead recite the specific technical steps for generating the training data that machine learning models consume. The claims describe precisely how synthetic images are created—through the integration of specific databases, 3D rendering processes, and camera simulation parameters—to produce training data that accurately reflects real-world imaging conditions. This is not the functional, black-box approach rejected in *Recentive*; it is a concrete technical method for solving a specific problem in the synthetic data generation field.

**B. The Claims Contain an Inventive Concept Under Alice Step Two**

Even if the Court were to find that the claims are directed to an abstract idea under step one—which AIIA disputes—the claims nonetheless contain an inventive

concept that transforms them into patent-eligible subject matter under step two. The specific combination of technical elements in Claim 1, including the use of camera settings files with calibration metadata, the integration of multiple specialized databases, and the coordinate transformation based on virtual camera parameters, amounts to significantly more than conventional computer activity.

The specification describes these elements as improvements over the prior art. Specifically, the '272 Patent explains that prior synthetic data generation methods failed to account for the specific optical and sensor characteristics of actual imaging devices, resulting in a "domain gap" between synthetic and real-world images that degraded machine learning model performance. The claimed invention addresses this problem by incorporating camera calibration parameters into the synthetic image generation process, producing training data that more closely matches the characteristics of images captured by real cameras.

As the Federal Circuit explained in *Berkheimer*: The specification's discussion of the prior art and the manner in which the invention improves the way a computer functions . . . provides strong evidence that the claimed invention is not merely the routine or conventional use of technology. 881 F.3d at 1368-70. Here, the specification's description of the domain gap problem and the technical solution provided by the claimed method establishes that the combination of elements in the claims is not merely routine or conventional.

Defendant's assertion that the claims merely recite "generic computer components" ignores the specific technical limitations in the claims and the

improvements described in the specification. A "processor" recitation alone might not provide an inventive concept, but the claims here do not merely recite using a processor—they recite specific technical steps, including receiving camera settings files with defined calibration parameters, constructing scenes using 3D graphics rendering engines, placing virtual cameras with specific optical parameters, and transforming coordinates based on those parameters. This specific, ordered combination of technical elements provides the inventive concept required under step two.

### C. Factual Disputes Preclude Dismissal at the Pleading Stage

Even setting aside the merits of the § 101 analysis, Defendant's motion must be denied because factual disputes exist that cannot be resolved on a motion to dismiss. The Federal Circuit's decisions in *Berkheimer* and *Aatrix* make clear that "whether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination." *Berkheimer*, 881 F.3d at 1369.

In *Aatrix*, decided just six days after *Berkheimer*, the Federal Circuit reversed a dismissal on § 101 grounds, holding that allegations in the complaint regarding improvements over the prior art "raise factual disputes underlying the § 101 analysis." 882 F.3d at 1127-28. The court emphasized that at the pleading stage, the plaintiff's factual allegations must be taken as true. *Id.* at 1125.

Here, AIIA's Complaint contains specific factual allegations regarding the technological improvements provided by the claimed invention, including that the claimed method produces more realistic synthetic training data by incorporating actual camera calibration parameters, that the specific combination of databases and

rendering techniques had not been used in prior art systems, and that the claimed invention reduces the "domain gap" between synthetic and real-world images. These factual allegations, taken as true as they must be at this stage, establish genuine disputes regarding whether the claimed elements and their combination were well-understood, routine, and conventional at the time of the invention.

Defendant cannot meet its burden of establishing that all claim elements and their combination were routine and conventional based solely on the pleadings. As the Federal Circuit explained, "[w]hether a particular technology is well-understood, routine, and conventional goes beyond what was simply known in the prior art. The mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well- understood, routine, and conventional." *Berkheimer*, 881 F.3d at 1369. Resolving these factual questions requires evidence beyond the four corners of the complaint—evidence that is appropriately developed through discovery, not assumed on a motion to dismiss.

### D. Claim Construction Should Precede Any Patent Eligibility Determination

Defendant's motion is also premature because no claim construction has been performed. Although claim construction is not always required before ruling on patent eligibility, it is appropriate where "the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter." *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada (U.S.)*, 687 F.3d 1266, 1273-74

(Fed. Cir. 2012).

Here, Defendant's characterization of the claims as directed to "generic image manipulation" necessarily depends on how specific claim terms are construed. For example, the meaning of "camera settings files" containing "calibration metadata," the scope of "3D graphics rendering engine," and the specific nature of the "projection coordinates" transformation all bear directly on whether the claims are directed to a specific technical improvement or a generic abstract concept. Without proper claim construction, the Court cannot accurately assess the character of the claimed invention.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss should be denied. The claims of the '272 Patent are directed to a specific technological improvement in synthetic image data generation, not an abstract idea. The specific combination of technical elements in the claims provides an inventive concept. And factual disputes exist regarding whether the claimed elements were well-understood, routine, and conventional, which cannot be resolved on a motion to dismiss. AIIA respectfully requests that the Court deny Defendant's motion in its entirety.

Dated: December 23, 2025

Respectfully submitted,

GOLDEN LAW, P.C.
Independence Plaza II, Suite 250
14350 Northbrook Drive
San Antonio, TX 78232
(210) 495-0900
(210) 495-0997 (fax)
golden@goldenlaw.net

By: */s/ Robert E. Golden*
Robert E. Golden
Texas Bar No. 08085560

ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2025, I electronically filed the foregoing document using the Case Management/Electronic Case Filing ("CM/ECF") system, which will send a notice of electronic filing to all counsel of record.

By: */s/ Robert E. Golden*
Robert E. Golden