IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ARTIFICIAL INTELLIGENCE IMAGING ASSOCIATION, INC., Plaintiff, | ) | |
| v. | ) | Civil Action No. 5:25-CV-01370-OLG |
| MVISION AI, INC., Defendant. | ) | |

**DEFENDANT MVISION AI, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT UNDER 35 U.S.C. §101**

Defendant MVision AI, Inc. ("MVision"), by and through their undersigned counsel, respectfully files this reply in support of its motion to dismiss the complaint (ECF 12) under Rule 12(b)(6) because the Asserted Patent does not claim patent-eligible subject matter under 35 U.S.C. §101.

**PLAINTIFF FAILS TO IDENTIFY SUPPORT FOR A TECHNICAL SOLUTION OR EXPLAIN HOW TO ACHIEVE RESULTS**

Predictably, Plaintiff argues the '272 patent[1] claims a "specific technical solution" that "amounts to significantly more than conventional computer activity." (ECF 13, pp. 6-7.) Yet Plaintiff offers nothing beyond lifting some language from some steps of claim 1. (ECF 13, p. 4.) Plaintiff fails to even offer any distinction between claim 1 of the '272 patent and numerous cited decisions directed to digital image methods such as those at issue in this case, including *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1353 (Fed. Cir. 2023), *Adaptive Streaming*

[1] Plaintiff does not dispute Defendant's argument that the § 101 analysis may be performed on claim 1, which is representative of the claims in the '272 patent (ECF 12, p. 4.)

*Inc. v. Netflix, Inc.*, 836 F. App'x 900, 903 (Fed. Cir. 2020) (unpublished, collecting cases), *In re TLI Communications LLC Patent Litigation*, 823 F.3d 607, 610 (Fed. Cir. 2016) and *Sanderling Mgmt. v. Snap Inc.*, 65 F.4th 698, 703 (Fed. Cir. 2023). The reason is apparent—there is no difference between the rationale for finding the claims abstract in those cases and the rationale here. Like many of these cases, the specification offers no details on novel structures or processes—instead referencing a generic "processor" (essentially any type of general-purpose circuitry) and *any* "set of instructions executable by the processor." *See, e.g.*, '272 Patent, 9:61-10:3 (processor); '272 Patent, 13:1, 15:6, 24:38, 33:7, 34:40, 36:5, 37:45. Plaintiff points to sophisticated sounding language like "creating synthetic training data that accurately simulates real camera behavior" (ECF 13, p. 5), but this is nothing more than results-oriented language with no articulation of how those results must be achieved practicing claim 1. Without reciting how the results are achieved, claim 1 is merely an abstract idea. See *Univ. of Fla. Research Found., Inc. v. GE Co.*, 916 F.3d 1363, 1369 (Fed. Cir. 2019) ("claims do no 'more than simply instruct the practitioner to implement the abstract idea . . . on a generic computer."); *Affinity Labs of Tex., LLC v. Amazon.com, Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016) ("[t]he claims do no more than describe a desired function or outcome, without providing any limiting detail that confines the claim to a particular solution to an identified problem [the] purely functional nature of the claim confirms that it is directed to an abstract idea, not to a concrete embodiment of that idea.")

Plaintiff argues claim 1 is directed to "a specific technical solution for creating synthetic training data that accurately simulates real camera behavior" (ECF 13, p. 5), but fails to cite to any evidence, portion of the specification, or even a factual allegation in the complaint to support its bald assertions. Indeed, there is no reference anywhere in the '272 patent to "real camera" behavior, and certainly none in claim 1, which is all that matters for this analysis. Similarly,

Plaintiff refers to "specific integration of multiple databases with 3D rendering engines," but claim 1 of the '272 patent recites several distinct databases, not any integration of those databases. While Plaintiff was unable to distinguish its claims from those at issue in numerous other digital image cases, instead it turns first to *Enfish, LLC v. Microsoft Corp*., 822 F.3d 1327, 1337 (Fed. Cir. 2016). However, in *Enfish*, the Federal Circuit found that the specification of the patent at issue taught self-referential table functions differently than conventional database structures, relying on specific teachings in the patent for improving search times and memory requirements over traditional databases. *See id*. Plaintiff identified nothing analogous in the specification of the '272 patent, and certainly nothing in claim 1. Similarly, Plaintiff cites to *McRO, Inc. v. Bandai Namco Games America Inc.*, 837 F.3d 1299 (Fed. Cir. 2016), also for the proposition that '"unconventional rules' that 'improve[d] [an] existing technological process."' (ECF 13, p. 5.) Yet nothing in the specification of the '272 patent or in claim 1 suggests any improvement to computer operations or functionality. Like with *Enfish*, in the *McRO* decision the Federal Circuit identified specific "rules" articulated in the specification that were implemented in a particular order, "designed to achieve an improved technological result." *McRO*, 837 F.3d at 1316. Again, nothing in the '272 patent articulates "unconventional rules." If either decision were analogous, Plaintiff could identify language in the specification supporting for its argument. The failure to do so confirms claim 1 is abstract.

## PLAINTIFF CANNOT ARTICULATE AN INVENTIVE CONCEPT

Plaintiff argues that claim 1 also discloses an inventive concept, arguing that using data and a database—with a conventional computer and software—is somehow transformative. (ECF 13, p. 7.) According to Plaintiff, the '272 patent addresses the "domain gap" between synthetic and real-world images that degraded machine learning model performance, though it offers no

citation to the specification. (*Id.*) The phrase "domain gap" (which Plaintiff placed in quotes) is nowhere in the specification, nor is there any evidence or even an allegation in the complaint that (a) such a problem existed, (b) such a problem was recognized and/or solved by the inventors, or (c) that any such solution to a "domain gap" problem is addressed in claim 1. Plaintiff argues there are "specific technical limitations in the claims," but merely recites claim language with no evidence or even argument that the steps are anything more than wished-for results. "To save a patent at step two, an inventive concept must be evident in the claims." *Secured Mail Sols., LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 911 (Fed. Cir. 2017). Here, Plaintiff points to the claim, which uses generic functional language and conventional components, which cannot overcome abstraction in step 2. *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017) ("[C]laim 1 here only uses generic functional language to achieve [any] purported solutions."). Like in *Hawk Tech.*, the Federal Circuit recognized there was no inventive concept: "[n]othing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information." *Hawk Tech.*, 60 F.4th at 1359. As such, the '272 patent fails to overcome step 2 of *Alice*.

**<u>PLAINTIFF OFFERS NO FACTUAL DISPUTE OR CLAIM CONSTRUCTION ISSUE</u>**

Finally, Plaintiff contends that without claim construction the motion should be denied.[2] "[C]laim construction is not an inviolable prerequisite to a validity determination under § 101." *Bancorp Servs. L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir.

[2] Plaintiff does not contend an amendment to the complaint would impact the *Alice* analysis. Indeed, under this Court's rules, an amendment is precluded as Plaintiff opted not to amend in response to MVision's intent to file a Rule 12(b)(6) motion under *Alice. See* Standing Order in Civil Cases, Dkt. 8, p. 1.

2012). The Federal Circuit has "repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced." *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017). As the Federal Circuit recognized in *Sanderling Mgmt. v. Snap Inc*., 65 F.4th 698, 704 (Fed. Cir. 2023), where a plaintiff fails to provide a proposed constructions for terms or explain why any proposed constructions would make any difference to the Alice analysis, there is no obligation to perform claim construction. Here Plaintiff follows the same pattern, vaguely referencing terms it contends might be construed and might impact the *Alice* analysis. (ECF 13, pp. 9-10.) This is not enough to preclude dismissal. The '272 patent should be found invalid under §101, and the action dismissed with prejudice under Rule 12(b)(6).

DATED: December 30, 2025

*/s/ Brian R. Gilchrist*
Brian R. Gilchrist
TX Bar No. 07904795
FL Bar No. 774065
bgilchrist@allendyer.com
**ALLEN, DYER, DOPPELT**
**+ GILCHRIST, P.A.**
255 South Orange Avenue, Suite 1401
Orlando, Florida 32801
Telephone: (407) 841-2330
Facsimile: (407) 841-2343

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 30, 2025, I electronically filed the foregoing document using the Case Management/Electronic Case Filing ("CM/ECF") system, which will send a notice of electronic filing to all counsel of record.

/s/ Brian R. Gilchrist
Brian R. Gilchrist